**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**UNITED STATES OF AMERICA**

**Plaintiff,**

**v.** **Case No. 5:26-cv-**

**APPROXIMATELY $149,100.00**
**SEIZED FROM MIDFLORIDA**
**CREDIT UNION ACCOUNT #129948001**
**HELD IN THE NAME OF BIG VALLEY GRILLE**
**& BISTRO LLC**

**Defendant.**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff, the United States, brings this complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and Supplemental Rule G(2), approximately $149,100 seized from MIDFLORIDA Credit Union Account #129948001 held in the name of Big Valley Grille & Bistro, LLC (Defendant Funds) on the grounds that the funds are proceeds obtained from wire fraud offenses, in violation of 18 U.S.C. § 1343. Thus, the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent facts or omissions giving rise to the forfeiture occurred in this District.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(i). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6. The Defendant Funds constitute, or are derived from, proceeds traceable to the commission of an offense prosecuted in this district. Specifically, on or about November 22, 2022, Henry Troy Wade (Wade) was indicted on six counts of wire fraud, in violation of 18 U.S.C. § 1343, stemming from his involvement in fraudulently obtaining Economic Injury Disaster Loans (EIDL) from the Small

Business Administration (SBA). *See United States v. Henry Troy Wade*, Case No. 5:22-cr-84-JA-PRL at Doc. 1 (Criminal Case). The Indictment put Wade on notice of the United States' intent to forfeit any property that constituted, or was derived from, proceeds traceable to the wire fraud offenses, including the Defendant Funds. *Id.* At trial, Wade was found guilty of all six wire fraud offenses. Doc. 211-1. The jury also determined that the Defendant Funds were proceeds obtained by Wade as a result of the wire fraud offense charged in Count Six of the Indictment. Doc. 212-1, Criminal Case. Ultimately, a Final Order of Forfeiture for the Defendant Funds was entered. Doc. 340, Criminal Case. However, Wade died before he could be sentenced.

7. During the criminal investigation, the Defendant Funds were seized by the United States Secret Service (USSS) pursuant to a seizure warrant issued by this Court. *See* Case No. 5:21-mj-1252-PRL. The Defendant Funds are currently being held in a Treasury Suspense Account.

8. As set forth in Supplemental Rule G(3)(b)(i), because the Defendant Funds are in the government's possession, custody, or control, the Clerk of Court must issue a warrant to arrest the Defendant Funds.

**<u>BASIS FOR FORFEITURE</u>**

9. The Court's authority to order the civil forfeiture of property connected to a violation of 18 U.S.C. § 1343 derives from 18 U.S.C. § 981(a)(1)(C). Under 18 U.S.C. § 981(a)(1)(C), any property constituting, or obtained from, proceeds traceable to a "specified unlawful activity" is subject to civil forfeiture. "Specified

unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include the offenses listed in 18 U.S.C. § 1961(1), which expressly encompasses wire fraud under 18 U.S.C. § 1343.

10. As required by Rule G(2)(f), the facts set forth herein establish a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the United States will show, by a preponderance of the evidence, that the Defendant Funds constitute proceeds of wire fraud offenses.

## FACTS

11. At all times relevant, Kenneth Adams was employed as a Special Agent with the USSS.

## I. Overview of the CARES Act

12. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of the Economic Injury Disaster Loan (EIDL) program. EIDL is a Small Business Administration (SBA) program that provides low-interest funding to small businesses, renters, and homeowners affected by declared disasters.

13. In order to obtain an EIDL, a qualifying business had to apply to the SBA and provide information about its operations, such as the number of employees and gross revenues for the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The applicant also had to certify that all the information in the application was true and correct and agree in the required Loan Authorization and Agreement that the EIDL funds would be used solely as working capital to alleviate economic injury caused by disaster.

14. The amount of an EIDL, if the application was approved, was determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as set forth above. Any funds issued under an EIDL were issued directly by the SBA. EIDL funds were to be used as working capital, such as payroll expenses, sick leave, production costs, and ordinary business obligations, such as debts, rent, and mortgage payments.

15. EIDL applications were electronically received in cloud-based platforms. If an SBA application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System (FMS) to the Treasury and then to the recipient's bank account. The primary server for the FMS was in Sterling, Virginia.

## II. <u>The Fraud</u>

16. On or about March 23, 2021, Wade electronically submitted an EIDL application from South Carolina to the SBA for an EIDL on behalf of his business, Big Valley Grille & Bistro, LLC. Big Valley Grille & Bistro's EIDL application represented the business' gross revenues for the 12 months prior to January 31, 2021, was $761,155, and the cost of goods sold was $105,863. The application described the business as an "eating & drinking place" and a "restaurant – casual dining" business with 13 employees.

17. Florida Division of Corporations' records reveal that Big Valley Grille & Bistro, LLC was incorporated on September 10, 2018. Wade was the sole manager and registered agent of Big Valley Grille & Bistro, LLC. Its principal place of business was listed at an address in Ocala, Florida. Notably, Big Valley Grille & Bistro, LLC was in inactive status from September 2019 until August 4, 2020, when Wade filed for "reinstatement."

18. While Wade filed the necessary paperwork with the Florida Division of Corporations to incorporate Big Valley Grille & Bistro, LLC, it does not appear that the business was ever operational, which made it ineligible to receive an EIDL.

19. For example, Big Valley Grille & Bistro, LLC was not registered with the Florida Department of Revenue, and Wade never paid federal taxes for this business.

20. Additionally, according to Google Maps, this is a picture of the structure located at the "business address" listed on Big Valley Grille & Bistro, LLC's EIDL application:[1]



The property is a three-bedroom and two-bathroom house that sits on .44 acres in Ocala, Florida. This residence was not owned by Wade. In September 2024, the owner of the residence testified in Wade's trial that she did not know Wade and that he never operated a restaurant from her home.

[1] As will be explained below, Wade submitted three EIDL applications on behalf of Big Valley Grille & Bistro, LLC. Two of the three EIDL applications listed this residence as Big Valley Grille & Bistro, LLC's business address (the March 2021 and April 2020 EIDL applications). The August 2020 EIDL application listed an incomplete address as Big Valley Grille & Bistro, LLC's business address.

21. Further, Wade submitted three EIDL applications on behalf of Big Valley Grille & Bistro, LLC. The information about Big Valley Grille & Bistro, LLC's business contained within the three applications differed.

22. Specifically, on March 23, 2021, Wade submitted his application number 3317941807, which was the only EIDL application that was approved (Count Six in the Indictment). In this application, Wade listed his gross revenues for Big Valley Grille & Bistro, LLC for the 12-month period prior to the date of disaster as $761,155.

23. On April 9, 2020, Wade submitted his first failed EIDL application, application number 3303424255. In that application, Wade listed his gross revenues for Big Valley Grille & Bistro, LLC for the 12-month period prior to the date of disaster as $267,419.

24. And on August 20, 2020, Wade submitted a second failed application for Big Valley Grille & Bistro, LLC, application number 3313819142. This application was also denied. Wade again listed his gross revenues for Big Valley Grille & Bistro, LLC for the 12-month period prior to the date of disaster as $761,155.

25. These values were material to the EIDL applications because they were used to calculate the loan amount to which Wade would be entitled.

26. In each of the EIDL applications submitted on behalf of Big Valley Grille & Bistro, LLC, Wade's answer to the "Current Ownership Since" question on

the application was false. Wade listed August 22, 2018, as the date since current ownership. Information related to the current ownership was material to the eligibility determination because applicants were required to operate a legitimate, active, and functioning business to receive EIDL. Big Valley Grille & Bistro, LLC, however, was never operational, and therefore was not eligible for an EIDL.

## III. Fraud Proceeds Deposited into MIDFLORIDA Credit Union Account #129948001

27. On August 5, 2020, MIDFLORIDA Credit Union[2] Business Banking Account #129948001 held in the name of Big Valley Grille & Bistro, LLC was opened with a $400 deposit. Wade was the sole signatory on the account and represented that Big Valley Grille & Bistro, LLC was a "food delivery business."

28. On March 27, 2021, the SBA approved Big Valley Grille & Bistro, LLC's March 23, 2021 EIDL application, which created a funding wire request in the amount of $149,100.00.

29. On March 31, 2021, the SBA wire transferred $149,100.00 in EIDL loan proceeds for Big Valley Grille & Bistro, LLC into this account. The only other deposit into this account before the EIDL funds were deposited was the $400 used to open the account.

[2] This financial institution had branches and ATMS in the Middle District of Florida and elsewhere in Florida.

30. Hours after the $149,100.00 was deposited into this account, $40,000 was transferred via mobile banking application to another account Wade held at MIDFLORIDA Credit Union.

31. However, the following day, investigators at MIDFLORIDA Credit Union noticed this suspicious activity (*i.e.*, the quick movement of a large sum of money from one account to another that had recently been deposited) and moved the $40,000.00 back into this account and froze the funds.

32. The only other account activity was the transfer of $230.82 on April 7, 2021, to another account Wade held at MIDFLORIDA Credit Union,[3] and fees totaling $10 for paper statements in lieu of electronic ones. Thus, $149,259.18 was frozen pursuant to credit union policy. On or about November 9, 2021, $149,100.00 was seized by the USSS.

[3] MIDFLORIDA Credit Union allowed this transfer because it did not exceed the initial $400 deposited into the account, *i.e.*, funds the credit union believed were "clean funds."

## **CONCLUSION**

33. As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds are proceeds of wire fraud offenses, obtained in violation of 18 U.S.C. § 1343. Therefore, the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Dated: September 17, 2026. Respectfully Submitted,

GREGORY W. KEHOE
United States Attorney

By: *s/Nicole M. Andrejko* ______________
NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar No. 0820601
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
(407) 648-7500 – Telephone
E-mail: nicole.andrejko@usdoj.gov

**VERIFICATION**

I, Kenneth Adams, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of September 2026.

Kenneth Adams
Special Agent
United States Secret Service